937 A.2d 161

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Arthur D. WEBSTER.

Misc. Docket AG No. 63, Sept. Term, 2006.

Court of Appeals of Maryland.

Dec. 10, 2007.

450

452

Glenn M. Grossman, Deputy Bar Counsel (Melvin Hirshman, Bar Counsel), Attorney Grievance Commission of Maryland, for Petitioner.

Andrew Jay Graham (Kramon & Graham, P.A.), Baltimore, MD, for Respondent.

Argued Before BELL, C.J., and RAKER, HARRELL, BATTAGLIA, JOHN C. ELDRIDGE, (Retired, specially assigned), and ALAN M. WILNER, (Retired, specially assigned), JJ.

BATTAGLIA, J.

The Attorney Grievance Commission of Maryland ("Petitioner"), acting through Bar Counsel and pursuant to Maryland Rule 16–751(a),[1] filed a Petition For Disciplinary or Remedial Action against Respondent, Arthur D. Webster, on January 31, 2007. Bar Counsel alleged that Respondent violated Maryland Rules of Professional Conduct ("MRPC"), 1.1 (Competence),[2] 1.3 (Diligence),[3] 1.4 (Communication),[4]

---

1. Maryland Rule 16–751(a) provides:
 (a) **Commencement of disciplinary or remedial action.** (1) Upon approval of [the Attorney Grievance] Commission. Upon approval or direction of the [Attorney Grievance] Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. MRPC 1.1 states:
 A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

3. MRPC 1.3 provides:
 A lawyer shall act with reasonable diligence and promptness in representing a client.

4. MRPC 1.4 states:
 (a) A lawyer shall:
 (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
 (2) keep the client reasonably informed about the status of the matter;
 (3) promptly comply with reasonable requests for information; and
 (4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.
 (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

1.5(b) (Fees),[5] 1.15(a) (Safekeeping Property),[6] 1.16(d) (Declining or Terminating Representation)[7] and 8.4(a), (c) and (d) (Misconduct).[8] The charges involved Respondent's represen-

---

**5.** MRPC 1.5(b) was charged; before July 1, 2005, MRPC 1.5 stated:
(b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.
In 2005, MRPC 1.5(b) was amended, and currently provides:
(b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

**6.** MRPC 1.15(a) provides:
(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

**7.** MRPC 1.16(d) states:
(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

**8.** Violations of MRPC 8.4(a), (c) and (d) were charged in this case; they provide:
It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
\* \* \*
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice. . . .

tation of Rosie Edwards from 2004 through 2006 and Sheila Polk in 2006.

In accordance with Maryland Rules 16–752(a) and 16–757(c),[9] we referred the petition to Judge W. Newton Jackson, III of the Circuit Court for Wicomico County for an evidentiary hearing and to make findings of fact and conclusions of law. Judge Jackson held a hearing on June 8, 2007, and issued Findings of Fact and Conclusions of Law on July 3, 2007, in which he concluded by clear and convincing evidence that in the Edwards matter, Respondent had violated MRPC 1.15(a), 1.16(d) with respect to $630 that Respondent had received representing a filing fee for a conversion to a Chapter 11 bankruptcy proceeding, and 8.4(a), (c) and (d), and had violated MRPC 1.1, 1.3, 1.4, 1.16(d) and 8.4(d) in the Polk matter. Judge Jackson did not conclude that there were violations of MRPC 1.5(b), nor of MRPC 1.16(d) with respect to a $3,000 retainer in the Edwards matter, nor of MRPC 8.4(a) and (c) in the Polk matter:

## Opinion

"Petitioner alleges professional misconduct on the part of Respondent. A hearing was held on 8 June 2007. Glenn M. Grossman represented Petitioner; Andrew Jay Graham appeared for Respondent. Testifying were Rosie Edwards (via videotape), Respondent himself, William Handy and Barton Gold, the last two being essentially character witnesses. Various exhibits were admitted into evidence, in-

---

9. Maryland Rule 16–752(a) states:

(a) **Order.** Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing. Maryland Rule 16–757(c) states in pertinent part:

(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law.

cluding Petitioner's request for admission of facts and genuineness of documents and Respondent's response thereto.

"Petitioner's allegations pertain to two of Respondent's clients, Rosie Edwards and Sheila Polk. Each will be treated separately herein.

## Rosie L. Edwards

### Findings of Fact

"In September 2004, Ms. Edwards hired Respondent because of financial difficulties involving a daycare center on church property operated by her as pastor. Ms. Edwards had already filed a *pro se* Chapter 7 bankruptcy on behalf of the church, and Respondent advised her to convert the Chapter 7 to Chapter 11. To that end, on 23 September 2004, Ms. Edwards gave Respondent a personal check postdated to 29 September 2004 in the amount of $630. The words "conversion fee/Chapter 11" appear in the memorandum portion of the check.

"Simultaneously, Ms. Edwards paid a fee of $3,000 by way of a bank check to Respondent, who told her that he expected the total cost of the representation to be in the $10,000–$15,000 range for the Chapter 11. No retainer agreement was executed by Ms. Edwards.

"Respondent placed the funds from the two checks into his general operating account, which he used for general business purposes. Even though Ms. Edwards' personal check contained the notation "conversion fee," Respondent did not place those funds in trust. He did not use them for the purpose for which they were given him.

"Ms. Edwards assumed that Respondent had effected the conversion. In fact, Respondent did not convert the Chapter 7 bankruptcy to Chapter 11, because it became evident to him that Ms. Edwards was unable or unwilling to make the necessary periodic payments. Instead, he decided that a "re-write" of the existing bank loan against the property was the best course of action. In that regard, he contacted the bank's president and its attorney, but these negotiations

bore no fruit. He then advised her that a sale of the property was necessary. Ms. Edwards gave Respondent a list of 10 potential buyers, whom he contacted. Despite these efforts, no buyer could be found, and the bank scheduled a foreclosure sale.

"In late 2004, Respondent learned of the existence of a substantial IRS lien against the premises. Around the same time, the Chapter 7 proceeding was dismissed. In May 2005, the foreclosure sale occurred. Subsequent to the sale, Respondent identified a notice problem with respect to the IRS, but this became moot when the IRS waived that issue, and the sale was eventually ratified in August 2005. By then, Respondent was doing no work for Ms. Edwards of any kind. In April 2006, he returned $1,070 to her.

"At no time during any of the foregoing events did Respondent ever advise Ms. Edwards that he had not converted the Chapter 7 to a Chapter 11.

### Conclusions of Law

"Petitioner alleges violations of Maryland Lawyers' Rules of Professional Conduct 1.5(b), 1.15(a), 1.16(d), and 8.4(a), (c), and (d). Applying the standard of clear and convincing evidence, the Court finds that:

"1. Respondent did not violate Rule 1.5(b). Although he was initially hired to convert a Chapter 7 to a Chapter 11 (something he never did), the *focus* of his efforts for Ms. Edwards never changed, viz., saving her property from her creditors. Respondent did quote his client an hourly rate, and he did give her an estimate of her anticipated legal fees. Although he should have told Ms. Edwards that he was no longer pursuing the Chapter 11 option, the Court is not convinced that the scope of his representation ever changed. Moreover, the hourly rate was a reasonable one, and Respondent's efforts were calculated to achieve the best result for his client under the circumstances.

"2. Respondent did violate Rule 1.15(a) by not depositing the $3,630 into his escrow account.

"3. Respondent did not violate 1.16(d) with respect to the $3,000, because Petitioner has failed to show by clear and convincing evidence that this fee was not earned by Respondent. At $200 an hour, this retainer represents 15 hours of work. Although he did not produce time sheets, his testimony regarding various efforts made to save the property went uncontradicted. Fifteen hours of work over a nine-month period of time does not appear to be excessive. The Court does find, however, that Respondent did violate Rule 1.16(d) with respect to the $630 earmarked for converting the Chapter 7 to Chapter 11. Those monies were not earned as fees and should have been forthwith returned to the client when it became apparent that a Chapter 11 was not feasible.

"4. Respondent did violate Rule 8.4(a), (c), and (d) for the reasons noted above, especially his failure to deposit the retainers into escrow and his failure to return the $630 promptly.

### Sheila Polk

*Findings of Fact*

"In March 2006, Sheila Polk retained Respondent to seek an emergency hearing for the custody of her grandson, who had been living with her for several years. The natural mother wanted the child returned to her, but Ms. Polk believed it was not in his best interest. Ms. Polk paid Respondent a fee of $300 on or about 6 March 2006. The Respondent agreed to file for an emergency custody hearing on Ms. Polk's behalf in the Circuit Court for Wicomico County, but failed to do so, although he had previously drafted a complaint for custody on her behalf. When Ms. Polk called Respondent to determine the status of the matter, he told her that he had filed for the emergency hearing. At the hearing, Respondent testified that, while he knew he was not being truthful with Ms. Polk, he intended to file the complaint shortly after their conversation. He did not. Respondent advised Ms. Polk of his false

representation approximately a week later, when she asked him about the status of the matter. Respondent failed to return Ms. Polk's fee until on or about 7 July 2006 after Ms. Polk filed a complaint with Petitioner.

### Conclusions of Law

"Petitioner alleges violation by Respondent of Rules 1.1, 1.3, 1.4, 1.16(d), and 8.4(a), (c), and (d). Petitioner has proven by clear and convincing evidence that he has violated all of them.

"1. By failing to file a timely request for an emergency hearing, Respondent violated Rules 1.1 and 1.3.

"2. By misrepresenting the situation to Ms. Polk, he violated Rule 1.4.

"3. By failing to return the unearned fee, he violated Rule 1.16(d).

"4. By lying to his client and retaining an unearned fee, he violated Rule 8.4(d).

(emphasis in original).

## STANDARD OF REVIEW

■ In proceedings involving attorney discipline, this Court has original and complete jurisdiction and conducts an independent review of the record. *Attorney Grievance v. Nussbaum,* 401 Md. 612, ——, 934 A.2d 1, —— (2007); *Attorney Grievance v. Lawson,* 401 Md. 536, ——, 933 A.2d 842, —— (2007); *Attorney Grievance v. Mininsohn,* 380 Md. 536, 564, 846 A.2d 353, 369–70 (2004); *Attorney Grievance v. Awuah,* 374 Md. 505, 520, 823 A.2d 651, 660 (2003). In our review of the record, the hearing judge's findings of fact generally will be accepted unless they are clearly erroneous. Maryland Rule 16–759(b)(2); [10] *Nussbaum,* 401 Md. at ——, 934 A.2d at

---

10. Maryland Rule 16–759(b)(2) provides:

(2) Findings of fact. (A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.

——; *Lawson,* 401 Md. at ——, 933 A.2d at ——; *Attorney Grievance v. Goff,* 399 Md. 1, 28, 922 A.2d 554, 570 (2007); *Attorney Grievance v. Gore,* 380 Md. 455, 468, 845 A.2d 1204, 1211 (2004); *Attorney Grievance v. Potter,* 380 Md. 128, 151, 844 A.2d 367, 380–381 (2004). As to the hearing judge's conclusions of law, such as whether provisions of the MRPC were violated, our consideration is essentially *de novo.* Maryland Rule 16–759(b)(1);[11] *Nussbaum,* 401 Md. at ——, 934 A.2d at ——; *Lawson,* 401 Md. at ——, 933 A.2d at ——; *Attorney Grievance v. Mba–Jonas,* 397 Md. 690, 700, 919 A.2d 669, 675 (2007); *Attorney Grievance v. McLaughlin,* 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002); *Mininsohn,* 380 Md. at 564, 846 A.2d at 370; *Awuah,* 374 Md. at 520, 823 A.2d at 660.

## DISCUSSION

Neither Petitioner nor Respondent took exception to the hearing judge's findings of fact. Therefore, we accept the hearing court's findings of fact, as established, for the purpose of determining the appropriate sanction. Maryland Rule 16–759(b)(2)(A); *Attorney Grievance v. Floyd,* 400 Md. 236, 250, 929 A.2d 61, 69 (2007); *Attorney Grievance v. Logan,* 390 Md. 313, 319, 888 A.2d 359, 363 (2005). In the Edwards matter, Judge Jackson concluded that Respondent violated MRPC 1.15(a), 1.16(d) with respect to $630 that Respondent had received representing a conversion fee in a Chapter 11 bankruptcy proceeding, and 8.4(a), (c) and (d), and in the Polk matter, that Respondent violated MRPC 1.1, 1.3, 1.4, 1.16(d) and 8.4(d). He also, in the Edwards matter, concluded that

---

(B) If exceptions are filed. If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). The Court may confine its review to the findings of fact challenged by the exceptions. The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses.

11. Maryland Rule 16–759(b)(1) states:
(b) **Review by Court of Appeals.** (1) Conclusions of law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

Respondent did not violate MRPC 1.5(b), nor did he violate MRPC 1.16(d) with respect to a $3,000 retainer, and also concluded that the Respondent did not violate MRPC 8.4(a) and (c) in the Polk matter. Both Petitioner and Respondent took exceptions to various conclusions of law, each of which we shall address.

### A. Petitioner's Exception to Conclusions of Law

In the Edwards matter, Petitioner did not except to Judge Jackson's conclusion that MRPC 1.5(b) was not violated, nor to Judge Jackson's conclusion that MRPC 1.16(d) was not violated with respect to the retainer of $3,000.

With respect to the Polk matter, Petitioner excepts to Judge Jackson's failure to determine that MRPC 8.4(c) was violated when Respondent lied to Ms. Polk when he told her that he had filed a motion for an emergency custody hearing, when he knew he had not, and failed to return the retainer. Petitioner argues that because Judge Jackson stated, "By lying to his client and retaining an unearned fee, he violated MRPC 8.4(d)," it is "virtually axiomatic that the conduct set forth in this recital demonstrates a violation of [MRPC 8.4(c)]" as well. Respondent contends, conversely, that he did not violate MRPC 8.4(c) because his misrepresentation to Ms. Polk that he had filed the petition for the emergency hearing was a "little white lie" that did not rise to "fraudulent, deceitful, or misrepresentative behavior" proscribed by MRPC 8.4(c), and that he returned the $300 to Ms. Polk after she filed her complaint with Bar Counsel.

MRPC 8.4(c) states that it is professional misconduct for an attorney to:

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation. . . .

We have said that lying to a client about whether a pleading was filed can amount to a violation of MRPC 8.4(c). In *Attorney Grievance v. Steinberg*, 395 Md. 337, 910 A.2d 429 (2006), Steinberg was retained to represent a client in her efforts to forestall the sale of her home in foreclosure by filing

a Chapter 13 bankruptcy petition; the client paid Steinberg a $1,000 retainer. Steinberg did not file the petition, but he told the client that he had. The client subsequently received a letter notifying her of the date of the foreclosure sale, after which, Steinberg again assured her that he had filed the petition. Steinberg did not make "timely good faith efforts to make restitution or rectify the damage caused by his misrepresentations," *id.* at 376, 910 A.2d at 452, and we concluded that he violated MRPC 8.4(c) because he misrepresented that he had filed the Chapter 13 petition:

> Further, Respondent violated MRPC 8.4(c) when he misrepresented to Ms. Adeleye that he filed the Chapter 13 Petition. In *Harrington,* we held that it was a violation of MRPC 8.4(c) where an attorney lead his client to believe that he had filed a law suit on her behalf when he, in fact, had not. 367 Md. at 48, 785 A.2d at 1267.

*Steinberg,* 395 Md. at 369–70, 910 A.2d at 448. *See also Attorney Grievance v. Guberman,* 392 Md. 131, 135–36, 896 A.2d 337, 339–40 (2006) (attorney violated MRPC 8.4(c) when he falsely represented to the partners of his firm that he had filed an appeal on behalf of a client); *Attorney Grievance v. Harrington,* 367 Md. 36, 48, 785 A.2d 1260, 1267 (2001) (attorney violated MRPC 8.4(c) when he led his client to believe that he had filed a legal malpractice law suit on her behalf when he had not).

■ Also, in *Attorney Grievance v. McLaughlin,* 372 Md. at 467, 813 A.2d at 1145, we concluded that McLaughlin violated MRPC 8.4(c) when he did not refund $72,000 in retainer fees provided by several clients. Specifically, we noted that because McLaughlin had not performed any work for the clients, his retention of the retainers was dishonest and deceitful, and remarked that the "retention of unearned fees paid by a client, alone, may constitute a violation of MRPC 8.4(c)." *Id.* at 502–03, 813 A.2d at 1166 (citations omitted). *See also Attorney Grievance Comm'n v. Milliken,* 348 Md. 486, 510, 704 A.2d 1225, 1236 (1998) (attorney violated MRPC 8.4(c) when he failed to refund a fee he had not earned). We, therefore, sustain Bar Counsel's exception and determine that Respon-

dent acted dishonestly and deceitfully in violation of MRPC 8.4(c) when he lied to his client about his failure to file the petition and did not promptly return her fee.

## B. Respondent's Exceptions to Conclusions of Law

### 1. The Edwards Matter

Judge Jackson concluded that Respondent violated MRPC 1.15(a) by not depositing Ms. Edwards' $3,000 retainer into his escrow account. He also determined that Respondent violated MRPC 1.15(a) by not depositing into his escrow account an additional $630 check from Ms. Edwards which was identified as payment of the filing fees for converting a Chapter 7 to a Chapter 11 bankruptcy, and MRPC 1.16(d) by not promptly returning to Ms. Edwards the $630. The hearing judge also concluded that Respondent violated MRPC 8.4(a), (c) and (d) based upon his previous conclusions of law and especially because Respondent did not deposit Ms. Edwards' $3,000 retainer and $630 check into his escrow account and failed to promptly return the $630.

Respondent excepts to Judge Jackson's conclusion that he violated MRPC 1.15(a), arguing that his conduct constituted a technical violation, but not a substantive violation because Ms. Edwards, allegedly, was not harmed as a result. Bar Counsel, conversely, argues that Respondent violated MRPC 1.15(a) because he deposited the $3,000 retainer and the $630 check into his general operating account.

■ MRPC 1.15(a) states in part:

A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property.

With respect to the $3,000 retainer, we recently stated in *Attorney Grievance v. Guida,* 391 Md. 33, 891 A.2d 1085 (2006):

Funds given in anticipation of future legal services qualify as trust money and, accordingly, are to be deposited in trust accounts separate from the attorney's property, to be re-

moved promptly by the attorney as earned. *To deposit such trust money into the attorney's personal or operating accounts before the fees are earned constitutes a violation of MRPC 1.15(a).*

*Id.* at 53, 891 A.2d at 1097 (emphasis added) (citations omitted). *See also Attorney Grievance v. Culver,* 381 Md. 241, 279, 849 A.2d 423, 446 (2004) (attorney violated MRPC 1.15(a) when he deposited retainer in operating account); *Attorney Grievance v. Blum,* 373 Md. 275, 298–99, 818 A.2d 219, 233 (2003) (attorney who deposited funds for the purpose of retaining his future services into his personal and operating accounts violated MRPC 1.15(a)); *McLaughlin,* 372 Md. at 504, 813 A.2d at 1167 (attorney violated MRPC 1.15(a) when he deposited retainer fees into his operating account). Clearly, Respondent's failure to deposit the $3,000 retainer into his escrow account was a violation of MRPC 1.15(a) and we overrule Respondent's exception.

With respect to Respondent's failure to deposit the filing fee of $630 into his escrow account, money linked to a specific purpose qualifies as trust money as well and must be deposited in an escrow account. In *Attorney Grievance v. Rose,* 391 Md. 101, 111, 892 A.2d 469, 475 (2006), we concluded that Rose violated MRPC 1.15(a) when he failed to deposit $100 from a client for the filing fee in a divorce action into his escrow account. In *Attorney Grievance v. Calhoun,* 391 Md. 532, 567, 894 A.2d 518, 538–39 (2006), moreover, we determined that Calhoun violated MRPC 1.15(a) by failing to deposit $5,000 received from a client to pay for prospective deposition costs into his escrow account. Clearly, Respondent's failure to deposit the $630 payment for converting the Chapter 7 to a Chapter 11 bankruptcy petition into his escrow account was a violation of MRPC 1.15(a) and we overrule Respondent's exception.

Respondent also excepts to Judge Jackson's conclusion that he violated MRPC 1.16(d) regarding the $630, arguing that his conduct constituted a technical violation of that rule, but not a substantive violation because Ms. Edwards, alleged-

ly, was not harmed as a result. Bar Counsel argues, conversely, that Respondent violated MRPC 1.16(d) because he failed to promptly return the $630.

MRPC 1.16(d) provides in part:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . refunding any advance payment of fee or expense that has not been earned or incurred.

In *Attorney Grievance v. Tinsky*, 377 Md. 646, 652–53, 835 A.2d 542, 545–46 (2003), this Court determined that Tinsky violated MRPC 1.16(d) when he failed to return $925 provided by a client for "his fees and expenses" in connection with a Chapter 7 bankruptcy petition when the client terminated his representation. *See also Attorney Grievance v. Duvall*, 384 Md. 234, 240, 863 A.2d 291, 294 (2004) (attorney violated MRPC 1.16(d) when she failed to return advance payment of fee and expenses when her client terminated the representation). Respondent did not return the $630 when he determined that a Chapter 11 conversion was not feasible, and thereby violated MRPC 1.16(d); we overrule Respondent's exception.

■ Respondent also excepts to Judge Jackson's conclusion that he violated MRPC 8.4(a), (c) and (d), arguing that he "did not act with any wrongful or dishonest intent; did not attempt to violate any rule of professional conduct; did not engage in conduct involving dishonesty, fraud, deceit or misrepresentation; and did not engage in conduct prejudicial to the administration of justice." Respondent contends that he did not violate MRPC 8.4(a), (c) and (d) because his intention was not to cheat Ms. Edwards, nor to enrich himself. Bar Counsel argues in opposition that Respondent violated MRPC 8.4(a), (c) and (d) by intentionally misappropriating Ms. Edwards' funds.

Sections (a), (c) and (d) of MRPC 8.4 state in pertinent part:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct ...;

* * *

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice....

With respect to the $3,000 retainer, we have consistently noted that the failure to deposit client funds into escrow accounts amounts to a violation of MRPC 8.4(c) and (d). In *Attorney Grievance v. James,* 385 Md. 637, 870 A.2d 229 (2005), James was given a $500 retainer, which he immediately deposited into his operating account. We noted that the "gravamen of the issue surrounding the money is that none of Ms. Kazim's retainer ever was placed in a trust account ...," *id.* at 661, 870 A.2d at 243, and that this failure constituted misappropriation of client funds in violation of MRPC 8.4(c) and (d):

James's failure to deposit Mr. Kazim's retainer and $500 in funds to be paid to an investigator also violated MRPC ... 8.4(d)....

* * *

The hearing judge determined that James acted in violation of MRPC 8.4(c) when he dishonestly took trust monies from Mr. Kazim by failing to deposit the $500 retainer and investigative money in the trust account. We have previously held that "[i]ntentional misappropriation is also a violation of MRPC Rule ... 8.4(c)."

*Id.* at 663–64, 870 A.2d at 244–45 (citations omitted). *See also Attorney Grievance v. McCulloch,* 397 Md. 674, 683, 919 A.2d 660, 665 (2007) (attorney violated MRPC 8.4(c) and (d) when she improperly deposited client's retainer into her operating account); *Attorney Grievance v. Kapoor,* 391 Md. 505, 527–29, 894 A.2d 502, 515–16 (2006) (attorney violated MRPC 8.4(c) and (d) when he deposited partial fee payment into his person-

al account rather than a trust account for the client). Respondent's failure to deposit the $3,000 retainer into his escrow account was dishonest, deceitful and prejudicial to the administration of justice in violation of MRPC 8.4(c) and (d). We agree with Judge Jackson and overrule Respondent's exception.

■ With respect to the $630 filing fee for converting the Chapter 7 to a Chapter 11 bankruptcy, Respondent's conduct in depositing the filing fee, which was to be held in his escrow account, into his operating account and using the funds for general business purposes also was an act of misappropriation. In a situation comparable to the instant one, *Attorney Grievance v. Gallagher*, 371 Md. 673, 810 A.2d 996 (2002), a client provided Gallagher $30,000 related to his securing an L–1 visa approval, to be deposited in Gallagher's escrow account; Gallagher, however, deposited the money into his personal account. We concluded that such misconduct violated MRPC 8.4(c) and (d) because Gallagher misappropriated client funds and misrepresented to his client that the funds would be held in his escrow account:

> This Court has consistently found misappropriation of client funds and deceit to constitute a violation of MRPC 8.4(c). Respondent's conduct was dishonest and deceitful in that he led Mr. Lobo to believe that Mr. Lobo's $30,000 would be held in trust and returned to him in full, subject to their agreement, while he later disbursed that money without Mr. Lobo's knowledge or consent. Respondent also made misrepresentations about his authority to distribute this account's funds to petitioner. Additionally, respondent misled Mr. Damani when respondent indicated that Mr. Damani's money would be held in trust.
>
> This Court has also found conduct constituting the misappropriation of client or third party funds to be "prejudicial to the administration of justice" in violation of Rule 8.4(d). In the case *sub judice*, we hold that respondent's conduct in the handling of his clients' trust accounts was directly harmful to the legal profession.

This Court has said in *Attorney Grievance Comm'n v. Clark*, 363 Md. 169, 183, 767 A.2d 865, 873 (2001), that "[p]ublic confidence in the legal profession is a critical facet to the proper administration of justice." If this Court were not to sanction respondent severely, other lawyers would not receive appropriate guidance regarding the standards to which all should be held and public confidence in the legal profession might be greatly diminished. As such and in line with precedent, we hold that respondent violated MRPC 8.4(d) by engaging in conduct that was prejudicial to the administration of justice.

*Id.* at 712–13, 810 A.2d at 1019–20. Respondent's failure to deposit the $630 into his escrow account and using those funds for general business purposes was a misappropriation of client funds in violation of MRPC 8.4(c) and (d), and we overrule Respondent's exception.

Because we have concluded that Respondent has violated various Rules of Professional Conduct, we overrule Respondent's exception that he violated MRPC 8.4(a), which finds professional misconduct where a lawyer "violates or attempts to violate the Rules of Professional Conduct." *See Attorney Grievance v. Cherry–Mahoi*, 388 Md. 124, 159, 879 A.2d 58, 80 (2005); *James*, 385 Md. at 663, 870 A.2d at 245; *Gallagher*, 371 Md. at 710–11, 810 A.2d at 1018.

### 2. The Polk Matter

Respondent took exception to "the trial court's Conclusion of Law to the extent that the trial court concluded that any of the violations involve a wrongful intent and particularly any intent to harm or take advantage of a client." We address each violation and overrule Respondent's exceptions.

Respondent excepts to Judge Jackson's conclusion that he violated MRPC 1.1, 1.3, 1.4 and 1.16(d) because his misrepresentation to Ms. Polk that he had filed the petition for the emergency hearing was a "little white lie" which did not harm Ms. Polk. Bar Counsel argues, conversely, that Respondent violated MRPC 1.1, 1.3, 1.4 and 1.16(d) by failing to file for the

emergency custody hearing, by misrepresenting the status of the case to Ms. Polk and by failing to promptly return the $300 fee.

MRPC 1.1 states in part:

A lawyer shall provide competent representation to a client.

MRPC 1.3 provides:

A lawyer shall act with reasonable diligence and promptness in representing a client.

MRPC 1.4 iterates in part that a lawyer must:

(2) keep the client reasonably informed about the status of the matter; [and]

(3) promptly comply with reasonable requests for information. . . .

In *Attorney Grievance v. Steinberg,* 395 Md. at 371, 910 A.2d at 449, we determined that Steinberg violated MRPC 1.1, 1.3 and 1.4 when he failed to file a Chapter 13 bankruptcy petition on behalf of his client, took no further action to protect his client's home in an impending foreclosure sale, and repeatedly lied to his client that he had filed the petition and that the home was safe from sale. Also, in *Attorney Grievance v. Guida,* 391 Md. at 43–54, 891 A.2d at 1091–97, this Court concluded that Guida violated MRPC 1.1, 1.3 and 1.4 when he failed to prepare and proceed with an adoption case, and lied to his clients, misrepresenting that he had filed the case.

■ In the present case, Ms. Polk paid Respondent $300 to seek an emergency hearing for the custody of her grandson, who had been living with her for several years, after the biological mother wanted the child returned to her. Respondent, however, failed to file an emergency petition. Ms. Polk called Respondent to determine the status of the matter, and Respondent lied to her that he had in fact filed the petition and only fessed up when Ms. Polk contacted Respondent again. We agree with Judge Jackson that Respondent violated MRPC 1.1, 1.3 and 1.4, and therefore we overrule Respondent's exceptions.

 Respondent also violated MRPC 1.16(d), which iterates that "[u]pon termination of representation, a lawyer shall ... refund any advance payment of fee or expense that has not been earned or incurred," by failing to return the $300 retainer promptly. As we have already discussed herein, the failure to promptly return an unearned fee advanced by a client constitutes a violation of MRPC 1.16(d), and we overrule Respondent's exception in this regard.

 Respondent also excepts to Judge Jackson's conclusion that he violated MRPC 8.4(d) "to the extent that the trial court concluded that [the violation] involve[s] a wrongful intent and particularly any intent to harm or take advantage of a client." Respondent contends that he did not violate MRPC 8.4(d) because he did not intend to harm Ms. Polk, but rather that he merely forgot to file the motion for an emergency custody hearing after he had misrepresented that he had. Conversely, Bar Counsel argues that Respondent violated MRPC 8.4(d) because he knowingly lied to Ms. Polk about the status of her case.

MRPC 8.4(d) provides that it is professional misconduct for an attorney to:

(d) engage in conduct prejudicial to the administration of justice....

In *Attorney Grievance v. Reinhardt*, 391 Md. 209, 892 A.2d 533 (2006), Reinhardt told his client he was working on her case, when in fact, he had lost the file. After concluding that the attorney "did act dishonestly and did misrepresent to his client," we noted that the attorney violated MRPC 8.4(d) because it "goes without saying that a lawyer should not lie to the client about the status of the client's case":

Behavior that may seriously impair public confidence in the entire profession, without extenuating circumstances, may be conduct prejudicial to the administration of justice. An attorney's material misrepresentation to the client, his failure to act on the client's case for over three years and failure to expedite litigation, to the client's detriment, is conduct prejudicial to the administration of justice. Failure

to represent a client in an adequate manner and lying to a client constitute a violation of Rule 8.4(d).

*Id.* at 222–25, 892 A.2d at 540–42 (citations omitted). *See also Attorney Grievance v. Guida,* 391 Md. at 43, 891 A.2d at 1091 (attorney violated MRPC 8.4(d) when he lied to the clients, misrepresenting that he had filed an adoption case). Moreover, in *Attorney Grievance v. Tinsky,* 377 Md. at 652–53, 835 A.2d at 545–46, we agreed with the hearing judge that Tinsky violated MRPC 8.4(d) in connection with his representation of a client in a bankruptcy case, because he failed to take any effective action on behalf of the client, accepted $925 for his representation, and failed to refund the fees. *See also Milliken,* 348 Md. at 510, 704 A.2d at 1236 (attorney violated MRPC 8.4(d) when he failed to refund a fee he had not earned).

Although Respondent in the present case alleges that he did not engage in conduct that is "prejudicial" to the administration of justice because he did not intend to injure Ms. Polk, it is difficult to conceive of conduct that could be more prejudicial than failing to file an emergency petition for a custody hearing on behalf of a caregiver, who believes she is acting in a child's best interest. We, therefore, agree with the hearing judge that Respondent violated MRPC 8.4(d) in the Polk matter and overrule Respondent's exception.

### SANCTION

The appropriate sanction for a violation of the Rules of Professional Conduct generally "depends on the facts and circumstances of each case, including consideration of any mitigating factors," *Attorney Grievance v. Zuckerman,* 386 Md. 341, 375, 872 A.2d 693, 713 (2005), in furtherance of the purposes of attorney discipline: " 'to protect the public, to deter other lawyers from engaging in violations of the Maryland Rules of Professional Conduct, and to maintain the integrity of the legal profession.' " *Id.* at 375, 872 A.2d at 713, quoting *Blum,* 373 Md. at 303, 818 A.2d at 236; *Awuah,* 374 Md. at 526, 823 A.2d at 663. In *Attorney Grievance v. Sheridan,* 357 Md. 1, 27, 741 A.2d 1143, 1157 (1999), quoting

*Attorney Grievance Comm'n v. Deutsch*, 294 Md. 353, 368–69, 450 A.2d 1265, 1273 (1982), we said:

> Because "an attorney's character *must remain beyond reproach*" this Court has the duty, since attorneys are its officers, to insist upon the *maintenance* of the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute. Disciplinary proceedings have been established for this purpose, not for punishment, but rather as a catharsis for the profession and a prophylactic for the public.

(emphasis in original). When imposing sanctions, we have enunciated that, "[t]he public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed." *Gore*, 380 Md. at 472, 845 A.2d at 1213. Therefore, in this case we consider the nature of the ethical duties violated in light of any aggravating or mitigating circumstances. *Attorney Grievance v. Sweitzer*, 395 Md. 586, 598–99, 911 A.2d 440, 447–48 (2006).

▮▮▮ Petitioner has recommended a sanction of disbarment, while Respondent argues that he should receive a "a much more lenient" sanction such as a "a reasonable suspension" as that which we meted out in *Attorney Grievance v. Goff*, 399 Md. at 1, 922 A.2d at 554. In that case, Goff was indefinitely suspended with the right to reapply for readmission 60 days after the date of the suspension for violating MRPC 1.1, 1.3, 1.15(a) and (b), 8.1(b) and 8.4(d), Maryland Rule 16–609 and Section 10–306 of the Business, Occupations and Professions Article in connection with his handling of estate proceeds. Unlike the present case, Bar Counsel in *Goff* recommended that Goff be indefinitely suspended rather than disbarred. *See Attorney Grievance v. Midlen*, 395 Md. 628, 652, 911 A.2d 852, 867 (2006) (noting that "but for Bar Counsel's recommendation, we may well have considered a more severe sanction"). In the present case, we agree with Bar Counsel that the Respondent should be disbarred.

Respondent knowingly and willfully misappropriated entrusted funds and lied to clients. We have stated that intentional misappropriation of funds entrusted to an attorney's care is an act infected with deceit and dishonesty, and, in the absence of compelling extenuating circumstances justifying a lesser sanction, will result in disbarment. *James,* 385 Md. at 666, 870 A.2d at 246; *Attorney Grievance v. Spery,* 371 Md. 560, 568, 810 A.2d 487, 491–92 (2002). Such a sanction is warranted because attorneys

> must remember that the entrustment to them of the money and property of others involves a responsibility of the highest order. They must carefully administer and account for those funds. Appropriating any part of those funds to their own use and benefit without clear authority to do so cannot be tolerated.

*Cherry–Mahoi,* 388 Md. at 161, 879 A.2d at 81; *Attorney Grievance Comm'n v. Owrutsky,* 322 Md. 334, 345, 587 A.2d 511, 516 (1991).

Additionally, "[i]t is well settled that '[d]isbarment ordinarily should be the sanction for intentional dishonest conduct.'" *Attorney Grievance v. Ward,* 396 Md. 203, 218, 913 A.2d 41, 50 (2006); *Attorney Grievance v. Cafferty,* 376 Md. 700, 720, 831 A.2d 1042, 1054 (2003). This is so because "[c]andor and truthfulness are two of the most important moral character traits of a lawyer." *Attorney Grievance Comm'n v. Myers,* 333 Md. 440, 449, 635 A.2d 1315, 1319 (1994). *See also Attorney Grievance v. Pennington,* 387 Md. 565, 596, 876 A.2d 642, 660 (2005) (noting the "'unparalleled importance of honesty in the practice of law'"). As we stated in *Attorney Grievance v. Blum,* 373 Md. at 304–05, 818 A.2d at 237, quoting *Attorney Grievance v. Angst,* 369 Md. 404, 420, 800 A.2d 747, 757 (2002):

> Honesty is of paramount importance in the practice of law. "Unlike matters relating to competency, diligence, and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by

a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character."

Although the hearing judge did not make any mitigation finding, Respondent argues for a reduced sanction on the basis of his proffer that he has practiced law competently for more than thirty years, that he did not intend harm to either Ms. Edwards or Ms. Polk, that he has shown remorse, and that he has cooperated with Bar Counsel's investigation. Although Respondent extols the fact that he cooperated with Bar Counsel, such cooperation is not a factor which we will consider as mitigation because it is required by MRPC 8.1.[12]

Respondent also has had a prior disciplinary offense in 1998, for which he was suspended for thirty days for violating MRPC 1.7(b), 1.8(a), 8.1(b), and Maryland Rules 16–607(a) and 16–609. In the earlier matter, Respondent misused an attorney trust account by placing personal funds and other business funds into the account, violated numerous conflict of interest rules by making loans to both clients and opposing parties, and failed to timely respond to Bar Counsel requests. *Attorney Grievance Comm'n v. Webster*, 348 Md. 662, 705 A.2d 1135 (1998). Certainly, Respondent's years at the Bar have not been unblemished.

Respondent's knowing misappropriation of client funds and his lies to clients coupled with his prior disciplinary record, compel us to state that the public only will be protected by the imposition of a sanction of disbarment.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS**

---

**12.** MRPC 8.1 states:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION.